IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JULIE STOETZER,

           Plaintiff

vs.                                                   Case No. 19-2670-SAC

NOVATION IQ, LLC, et al.,

           Defendant.

MEMORANDUM AND ORDER

The plaintiff Julie Stoetzer ("Stoetzer") worked as Vice President of Product Management for the defendant Novation iQ, LLC ("NiQ") from February of 2018 through the middle of February of 2019. She filed this lawsuit on October 30, 2019, alleging claims of sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ECF# 1. Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, NiQ moves the court for an order compelling the plaintiff to arbitrate all claims in her lawsuit and staying the case until arbitration is completed. ECF# 9. NiQ seeks to enforce the arbitration clause found in their employment agreement. Stoetzer counters that the employment agreement to arbitrate is illusory and unenforceable, in that NiQ retained "the unfettered right to modify" the terms of the arbitration agreement. ECF# 12, p. 7. From its review of the governing documents and application of the relevant case law from this district, the court concludes the arbitration agreement is not illusory, but valid and enforceable. The defendant's motion is granted.

Statement of Facts

When she started working for NiQ, Stoetzer signed a seven-page document, entitled Employment Agreement, on February 21, 2018. ECF# 10-1, pp. 5-11. The Agreement recites as the parties' consideration the following:

> In consideration of the mutual promises and covenants set forth herein, and other good and valuable consideration, including continued employment and access to Company's trade secrets, confidential and proprietary information and Company's customer goodwill, the sufficiency of which is hereby acknowledged, Company and Associate hereby agree as follows . . . .

ECF# 10-1, p. 5. Section 8 of the Agreement sets forth the following term on arbitration:

> Subject to Section 8(a), any dispute, controversy or claim arising out of or relating to this Agreement or the breach hereof or Associate's employment, including, but not limited to, any claims for wrongful termination or employment discrimination, shall be resolved by arbitration in accordance with the rules of the American Arbitration Association. . . . Associate and Company agree that the Company is engaged in interstate commerce and this Section 8 is intended to comply with, and be interpreted, pursuant to the Federal Arbitration Act.

ECF# 10-1, p. 9. This Agreement further specifies that it is the only agreement between the parties and that any changes must be by written agreement:

> This Agreement may not be amended or modified except by a writing executed by all of the parties hereto. This Agreement constitutes the entire agreement of the Company and Associate relating to the subject matter hereof and supersedes any prior oral and written understandings and agreements relating to such subject matter.

ECF # 10-1, p. 10. Finally, the Agreement spells out that the Company handbook or its other practices govern on matters not covered by the Agreement but that the Agreement controls in the event of any conflict:

> The terms and conditions of Associate's employment shall, to the extent not addressed or described in this Employment Agreement, be governed by Company's Handbook and existing practices. In the event of a conflict between

> this Employment Agreement and the Handbook or existing practices, the terms of this Agreement shall govern.

ECF# 10-1, p. 5.

On her first day of work, Stoetzer also executed an Associate acknowledgement stating that she had received online access to a "Company Associate Playbook." ECF# 12-1, p. 1. This written acknowledgement included an employment-at-will provision followed by:

> I understand that except for employment "at-will," the Company can change status or any and all policies or practices at any time. I also understand that nothing in the Playbook creates, or is intended to create, a promise or representation of continued employment.

ECF# 12-1, p. 1. Stoetzer attaches this single-page acknowledgement to her response and nothing else. Notably, the acknowledgement makes no mention or reference to any agreement or requirement for arbitration. The only evidence of record concerning any employment term governing arbitration appears in the written Employment Agreement.

<u>Governing Law</u>

Enacted because of "widespread judicial hostility to arbitration agreements," the FAA recognizes that, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1250 (10th Cir. 2018) (quoting in part 9 U.S.C. § 2). The Act is a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v.*

3

*Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* By operation, § 3 of the FAA "obliges courts to stay litigation on matters that the parties have agreed to arbitrate," and § 4 "authorizes a federal district court to compel arbitration when it would have jurisdiction over a suit on the underlying dispute." *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 771 (10th Cir. 2010) (citation omitted). While the FAA "preempt[s] state laws that aim to channel disputes into litigation rather than arbitration, even under the FAA it remains a 'fundamental principle' that 'arbitration is a matter of contract,' not something to be foisted on the parties at all costs." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 338 (2011)).

In *Beltran*, the Tenth Circuit laid out the governing two-step inquiry:

> In deciding whether to grant a motion to arbitrate, courts must resolve "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* [*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)] at 84. The first inquiry requires a court to determine whether the arbitration agreement should "be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Concepcion*, 563 U.S. at 339 (quoting 9 U.S.C. § 2). "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The enforceability of the agreement is a matter of state law. *Id.*

907 F.3d at 1250-51. Procedurally, the court has set out the following summary to guide its decision of such matters:

> In determining whether a dispute is arbitrable, the court uses a burden-shifting framework similar to that used in deciding summary judgment motions.
> A defendant bears the initial burden of showing that an arbitration agreement is valid. *SmartText Corp. v. Interland, Inc.*, 296 F.Supp.2d

4

> 1257, 1262–63 (D.Kan.2003) (citations omitted); *Phox v. Atriums Mgmt. Co.*, 230 F.Supp.2d 1279, 1282 (D.Kan.2002). Once the defendant has met this burden, the plaintiff must show that a genuine issue of fact remains about the agreement. *SmartText Corp.*, 296 F.Supp.2d at 1263; *Phox*, 230 F.Supp.2d at 1282. "Just as in summary judgment proceedings, a party cannot avoid … arbitration by generally denying the facts upon which the right to arbitration rests…." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir.2002).
>
> *Hildebrand v. Par Network, Inc.*, 2009 WL 4508578, 1–2 (D.Kan.2009). To demonstrate a genuine issue of material fact as to the making of the agreement to arbitrate, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir.2000). In deciding whether the non-movant has identified a genuine issue of material fact for trial, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

*Rangel v. Hallmark Cards, Inc.*, No. 10-4003-SAC, 2010 WL 781722, at *4 (D. Kan. Mar. 4, 2010).

Analysis and Holding

There are no material issues of fact over whether Stoetzer entered into the Employment Agreement and thereby agreed to arbitrate all employment-related claims like those at issue in this lawsuit. On its face, the Agreement is plainly supported by mutual and valid consideration. While she criticizes the arbitration provision as "tremendously vague" and as carving out exceptions favorable to NiQ, Stoetzer does not fashion her criticisms into a legal argument for the court's consideration. Therefore, the court concludes that Stoezter was a party to the Employment Agreement which has a binding arbitration provision that covers all her claims here.

Stoetzer does contend, however, that the arbitration agreement is unenforceable as illusory because NiQ in the Associate Acknowledgement retained the

right to modify its "policies and practices" unilaterally. Stoetzer believes NiQ's retained authority to unilaterally change its policies extends to the Employment Agreement and the arbitration provision. NiQ denies that it retained any right to unilaterally modify any provisions in the Employment Agreement, including the binding arbitration provision. Instead, NiQ explains the language used by Stoetzer applies only to the "policies or practices" in the Playbook and not to the binding terms of the Employment Agreement.

The court has reviewed the Employment Agreement and agrees with NiQ. The Employment Agreement clearly provides it is the parties' exclusive contract. The Employment Agreement does not confer or reserve any authority to NiQ to change unilaterally any written term, including the binding agreement to arbitrate. The topic of the Associate Acknowledgement signed by Stoetzer is the Company Associate Playbook as a source of NiQ's policies and practices to be understood as not creating "a promise of representation of continued employment." ECF# 12-1, p. 1. This provision in the Acknowledgement cannot be reasonably interpreted as referring to or incorporating the Employment Agreement and, specifically, the parties' agreement to arbitrate. Stoetzer does not submit evidence showing that the Associate Acknowledgement or the Playbook even mentions the arbitration provisions or procedures in the Employment Agreement. Finally, the Employment Agreement plainly states that its terms govern any conflict with the Company's handbook policies and existing practices. These facts are uncontested as well as the legal conclusions that follow from them.

Consequently, this case plainly comes within the holding of *Clutts v. Dillard's, Inc.*, 484 F.Supp.2d 1222, 1226 (D. Kan. 2007). The court is persuaded by Judge Lungstrum's sound reasoning and conclusion reached in *Clutts*:

> Plaintiff urges that the agreement to arbitrate is also illusory because it allows defendant to unilaterally modify the terms at any time. In support of this argument, plaintiff relies on language not in the arbitration agreement itself or the accompanying Rules of Arbitration but in defendant's employee handbook and an "associate certification" signed by plaintiff that generally reference defendant's ability to change unilaterally defendant's rules, policies and benefits. As highlighted by defendant, however, neither the arbitration agreement nor the Rules of Arbitration reserves defendant's right to modify the terms of the arbitration agreement. Moreover, neither defendant's employee handbook nor the associate certification mentions the arbitration agreement in particular or arbitration procedures in general. In other words, the arbitration agreement and Rules of Arbitration are entirely separate and distinct from the employee handbook and associate certification. These facts, then, set this case apart from those cases in which courts have arbitration agreements illusory based on language in an employee handbook. *See, e.g. Dumais v. American Golf Corp.*, 299 F.3d 1216, 1217 (10th Cir. 2012) (arbitration agreement was illusory where employee handbook, which included arbitration provision, reserved employer's right to modify); *Barnes v. Securitas Security Sys. USA, Inc.,* 2006 WL 42233, at *1-2 (D. Kan. Jan. 6, 2006)(same). The court, then, rejects plaintiff's argument that defendant may unilaterally modify the arbitration agreement. *See Hill v. Peoplesoft USA, Inc.,* 412 F.3d 540, 543-44 (4th Cir. 2005) (arbitration agreement was separate and distinct from other documents permitting modification where the agreement was set forth in a comprehensive six-page document which the employee signed and agreement, on its face, unambiguously required both parties to arbitrate).

*Id*. at 1226 (footnote omitted); *see White v. Four B Corp.*, No. 11-2416-JWL, 2011 WL 4688843, at *3 (D. Kan. Oct. 5, 2011). In similar fashion, Judge Robinson has held that a provision in a handbook giving the employer authority to make unilateral changes was distinct from an Arbitration Agreement that was separately signed by the parties and did not allow for unilateral modifications:

> The Court agrees that the Arbitration Agreement is separate and distinct from the Handbook. The Arbitration Agreement does not allow Defendants to unilaterally modify or revoke; in fact, the Arbitration Agreement specifically provides that any modification or revocation be made in writing and signed by

7

> both parties. The Arbitration Agreement was signed separately and contains a merger clause. In signing the Handbook's receipt, Plaintiff acknowledged reading and agreeing to not only the Arbitration Agreement, but the provision within that agreement on revocation and modification. The Court therefore finds that the Arbitration Agreement controls that question and Defendants may not unilaterally modify or revoke the Arbitration Agreement. Thus, the Arbitration Agreement is not illusory.

*Lockard v. EYM King of Kansas, LLC*, No. 17-2181-JAR, 2017 WL 4012203, at *4 (D. Kan. Sep. 12, 2017)(footnotes omitted). The holdings in both cases are not only persuasive, but they are on all fours here. The court finds that the Employment Agreement with its arbitration provision is controlling. Because the Employment Agreement cannot be modified except in writing signed by all parties, because its terms govern any conflict with any policy or practice, and because the Associate Acknowledgement does not give NiQ the unilateral authority to modify or revoke the agreement to arbitrate, the court finds that the arbitration agreement here is not illusory. The court will enforce the parties' agreement to arbitrate as written.

IT IS THEREFORE ORDERED that NiQ's motion to stay the case and compel arbitration (ECF# 9) is granted. This case is hereby stayed pending the completion of arbitration. The parties shall file a status report no later than July 31, 2020, informing the court on the status and schedule of the arbitration proceedings.

Dated this 31st day of March, 2020, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge